**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
-----------------------------------------------------------------X
JAVIER ESPINAL, XAVIER ROSARIO, LUIGI
DORTONO and MANUEL DELGADO,

|  |  |
|---|---|
| Plaintiffs | **Case No. 18-CV-738** |
| v. | **CLASS AND** |
|  | **COLLECTIVE ACTION** |
| LEONID POGORILER, PETER CREUS, ONE OF | **COMPLAINT** |
| KIND TRANSPORT INC, ALL AROUND |  |
| MANAGEMENT INC, and ALL POINTS |  |
| TRANSPORTATION GROUP, INC., JOHN DOE |  |
| DEFENDANTS 1-10, |  |

Defendants.

-----------------------------------------------------------------X

Plaintiffs Javier Espinal, Xavier Rosario, Luigi Dortono and Manuel

Delgado (hereinafter referred to individually as "Plaintiffs") through their

attorneys, the Marlborough Law Firm, P.C., respectfully allege as follows:

## PRELIMINARY STATEMENT

1.    This is a prospective collective action lawsuit brought under the

Fair Labor Standards Act ("FLSA"), 29 USC 216(b), by Plaintiffs on behalf of

themselves and similarly situated drivers employed by Defendants

(collectively "the Surgical Center Drivers"), for the failure of their

employers, Leonid Pogoriler ("Pogoriler"), Peter Creus ("Creus"), One of

Kind Transportation, Inc. ("One of Kind"), All Around Management, Inc.

("All Around"), All Points Transportation Group, Inc. ("All Points"), and

John and Jane Does 1-10 (The "Doe Defendants") to pay Plaintiffs and prospective collective members for accrued overtime, minimum wage and unreimbursed expenses pursuant to the Fair Labor Standards Act 29 U.S.C. § 201, *et seq*. and for retaliation pursuant to 29 USC § 215 against Plaintiff Espinal.

2.     This action is further maintained as a prospective class action pursuant to F.RC.P. Rule 23, the New Jersey Wage and Hour Law ("NJWHL") and the New York Labor Law ("NYLL") and regulations promulgated thereunder against Defendants for failure to pay the Surgical Center Drivers overtime premium pay, minimum wage, and spread of hours premium pay, and failure to comply with wage statement and notification of pay rate requirements of New York's Wage Theft Prevention Act.

3.     Plaintiff Espinal also asserts individual claims against Defendants for workplace retaliation in violation of Section 215 of the FLSA, NYLL § 215 and New Jersey's Conscientious Employee Protection Act ("NJCEPA").

4.     Plaintiffs have executed tolling agreements with other potential defendants including Yan Moshe ("Moshe") and the Surgical Centers he operates through Dynamic Surgery Center, LLC ("Dynamic"), Excel Surgery Center, LLC ("Excel") and Health Plus Surgery Center, LLC ("Health Plus,"

collectively with Dynamic, and Excel, the "Surgical Centers"); Nazar Nikson ("Nikson") and MNBT Corp. ("MNBT"), a transportation company operated by Nikson, in an effort to resolve their claims prior to litigation (collectively, "Potential Defendants").  MNBT, All Around, One of Kind, All Point and Five Borough Trans. Group, Inc ("Five Borough") are hereafter referred to as the "Transportation Companies." Plaintiffs reserve the right to amend their Complaint to add one or more of the Potential Defendants.

5.     Plaintiffs and other similarly situated workers served as Surgical Center Drivers ("SCDs") to Defendants.   They drove mostly New York patients from medical appointments at Moshe's New Jersey Surgical Centers.  SCDs were misclassified as independent contractors rather than properly classified as non-exempt employees.

6.     SCDs were deprived of overtime and spread of hours premium pay and paid less than minimum wage after accounting for their unreimbursed work expenses.  SCDs were required to work up to sixteen hours a day at a rate of as little as $140 per day.  SCDs were not reimbursed for automobile expenses incurred in connection with the performance of their duties.  They did not receive proper wage statements or notifications of pay rate.

7.    The SCDs were jointly employed by Pogoriler, Creus, Nikson, Moshe and their respective companies.  With respect to control over the SCDs, the separate roles between the various individuals and entities was illusory.  MNBT and Nikson regularly supervised the SCDs from a central dispatch within the Surgical Centers.  Surgical Center personnel also served as dispatchers.  Cameras were installed in the cars of SCDs and they were monitored by Transportation Company and Surgical Center personnel. SCDs were issued identification cards by the Surgical Center staff. SCDs were required to perform services directly for Moshe and the Surgical Centers including transporting files and equipment from one surgical center to another and picking up snacks for the Surgical Center's waiting rooms, transporting surgical center personnel including physicians and making personal deliveries for Moshe.  Moshe personally threatened to fire workers and used his personal driver and Transportation Company personnel to keep workers apprised of Moshe's workplace rules.  He also directed Transportation Company personnel to terminate certain SCD's.

8.    Plaintiffs and other similarly situated workers seek conditional class certification over their FLSA claims and class certification of their state law claims.  They further seek compensatory and liquidated damages and pre- and post-judgment interest.

CLASS AND COLLECTIVE ACTION COMPLAINT                    4

9.    Plaintiffs Espinal also seeks damages in connection with Defendants' and Potential Defendants' retaliatory conduct, and injunctive relief to protect themselves and others from further retaliatory conduct.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' New York and New Jersey State law claims pursuant to 28 U.S.C. § 1367.

11.    This Court has personal jurisdiction over Defendants because the causes of action relate directly to Defendants' contacts with New Jersey. Moreover, Defendants' substantial contacts with New Jersey subject them to general jurisdiction in New Jersey.

12.    Venue is proper in the District of New Jersey because many of the acts and/or omissions giving rise to the claims herein allegedly took place in this District.

## PARTIES AND OTHER INTERESTED PERSONS

13.    Plaintiff Javier Espinal worked for Defendants at the Surgical Centers as an SCD from 2015 until approximately late August 2017, when he was transferred by Defendants Pogoriler in retaliation for his participation in this action to another location following a discussion with Defendant

Creus about Defendants' unlawful pay practices.  He generally worked substantially more than twelve hours per day, six to seven days per week for the Surgical Centers.

14.    Plaintiff Xavier Rosario worked for Defendants at the Surgical Centers as an SCD from approximately May 2016 to May 2017. He generally worked substantially more than twelve hours per day, six to seven days per week for the Surgical Centers.

15.    Plaintiff Luigi Dortono worked for Defendants at the Surgical Centers as an SCD from May 2015 until November 2016.  Plaintiff Dortono generally worked substantially more than twelve hours per day six to seven days per week.

16.    Plaintiff Manuel Delgado worked for Defendants at the Surgical Centers as an SCD from August 2014 until November 20, 2017.  Plaintiff Delgado generally worked substantially more than twelve hours per day six to seven days per week.

17.    Defendant Leonid Pogoriler is in active control and management of the SCDs, regulates the employment of the SCDs, acts directly and indirectly in the interest of his companies in relation to the SCDs, and is thus an employer of Plaintiffs and the prospective collective and class under the Fair Labor Standards Act, NYLL and NJWHL.  Defendant Pogoriler

operates Defendants One of Kind, All Around and All Points and previously operated Five Borough.

18.    Defendants Peter Creus is in active control and management of the SCDs, regulates the employment of the SCDs, acts directly and indirectly in the interest of the Surgical Centers and the Transportation Companies in relation to the SCDs, and is thus an employer of Plaintiffs and the prospective collective and class under the Fair Labor Standards Act, NYLL and NJWHL.

19.    Defendant One of Kind Transportation, Inc. is a New York corporation operated by Defendant Pogoriler. One of Kind is one of the corporations that engaged Plaintiffs and other prospective collective and class members to provide services to Moshe and the Surgical Centers.

20.    Defendant All Points Transportation Group, Inc. is a New York corporation operated by Defendant Pogoriler.  All Points is one of the corporations that engaged Plaintiffs and other prospective collective and class members to provide services to Moshe and the Surgical Centers.

21.    Defendant All Around Management, Inc. is a New York corporation operated by Defendant Pogoriler. All Around is one of the corporations that engaged Plaintiffs and other prospective collective and class members to provide services to Moshe and the Surgical Centers.

CLASS AND COLLECTIVE ACTION COMPLAINT          7

22.    Five Borough Trans. Group, Inc. was a New York corporation operated by Defendant Pogoriler.  Five Borough was one of the corporations that engaged Plaintiffs and other prospective collective class members to provide services to Moshe and the Surgical Centers until it was dissolved by Pogoriler in 2013.

23.    MNBT Corp. is a New Jersey corporation operated by Nikson. MNBT was one of the corporations that managed Plaintiffs and other prospective collective and class members in connection with services to Moshe and the Surgical Centers.

24.    Nazar Nikson operates MNBT.  Nikson is in active control and management of the SCDs, regulates the employment of the SCDs, acts directly and indirectly in the interest of his companies in relation to the SCDs, and is thus an employer of Plaintiffs and the prospective collective and class members under the Fair Labor Standards Act, NYLL and the NJWHL.

25.    Yan Moshe, is the owner and operator of the Surgical Centers. Moshe is in active control and management of the SCDs, regulates the employment of the SCDs, acts directly and indirectly in the interest of his companies in relation to the SCDs, and is thus an employer of Plaintiffs and

the prospective collective and class members under the Fair Labor

Standards Act, the NYLL and the NJWHL.

26.    Excel Surgery Center, LLC is a limited liability company which

operates Moshe's surgical center located in Hackensack, New Jersey.

27.    Dynamic Surgery Center, LLC is a limited liability company

which previously operated Moshe's surgical center located in Hackensack,

New Jersey.

28.    Health Plus Surgery Center, LLC is a limited liability company

which operates Moshe's surgical center located in Saddle Brook, New Jersey.

29.    Defendants John Doe 1-10 are individuals and corporations who

cannot be identified at this time and include, but are not limited to any

additional transportation companies providing drivers to the Surgical

Centers and the ten largest shareholders and LLC members of each of the

Defendants and Proposed Defendant entities.

30.    On September 9, 2017, Plaintiffs' counsel served notice to the

Transportation Companies and the Surgical Centers pursuant to New York

Business Corporations Law § 630 and New York LLC Law § 609 of the

potential for shareholder and member liability in this case. Plaintiffs'

counsel further demanded that each entity identify the ten largest

shareholders of their respective entity, preserving Plaintiffs' rights under

the statute.  To date, the entities have not provided the information demanded.

## FACTUAL ALLEGATIONS

31.    Plaintiffs and other similarly situated workers, worked for Defendants and Potential Defendants as SCDs.

32.    The SCDs' duties included driving patients to and from their homes to medical appointments at the Surgical Centers; escorting patients to and from their appointments within the Surgical Centers; driving Surgical Center physicians between their homes and the Surgical Centers; transporting files and equipment between the Surgical Centers; attending staff meetings; picking up snacks for the Surgical Center waiting rooms and running occasional errands for Moshe.

33.    The Surgical Centers are located close to the New York-New Jersey border.  Plaintiffs and other SCDs were required to perform a substantial majority of their work in New York State, where most of the Surgical Center patients lived.

34.    Defendants and Potential Defendants are employers of Plaintiffs and the proposed class under the FLSA, the NYLL and NJWHL.  Defendants and Potential Defendants have acted directly and indirectly in the interest of the enterprise in relation to Plaintiffs and other prospective class members.

35.    At all times relevant to the Complaint, Defendants failed to pay Plaintiffs and other SCDs overtime premium pay when working more than forty hours in a workweek and failed to pay spread of hours premium pay when working more than ten hours in a workday.  Moreover, Plaintiffs' wages after accounting for unreimbursed work-related expenses fell substantially below the federal, New York and New Jersey minimum wage.

**The SCDs Were Misclassified as Independent Contractors, Rather than Non-exempt Employees.**

36.    Plaintiffs were not exempt employees under federal, New York and New Jersey wage and hour laws.

37.    Plaintiffs and other SCDs were misclassified as independent contractors pursuant to Defendants' and Potential Defendants' common misclassification scheme.

38.    Defendants and Potential Defendants retained the right to control the manner in which Plaintiffs and other SCDs performed their work.

39.    Plaintiffs were closely supervised and threatened with termination if they did not abide by the dress code and/or behavioral restrictions.

40.    SCDs were required to wear identification cards at all times.

41.   **Plaintiffs and other SCDs** did not have an opportunity for profit or loss depending upon their managerial skill.

42.   The SCDs were paid at a day rate without regard to the number of hours worked or the amount of work they performed.

43.   **Plaintiffs and other SCDs** did not invest in equipment other than vehicles.

44.   Surveillance devices inside the SCDs' vehicles and EZ-Pass devices were furnished by Defendants and Potential Defendants.

45.   Plaintiffs and other SCDs were not permitted to employ helpers. Each of the SCDs were engaged directly by one or more of the Transportation Companies.

46.   The services rendered by Plaintiffs and other SCDs did not require special skills.

47.   Defendants and Potential Defendants required only that the SCDs maintained a standard driver's license to perform their work.

48.   **Plaintiffs and other SCDs** were engaged on a long-term basis.

49.   **Plaintiffs and other SCDs worked at the same Surgical Centers for years at a time.**  Their engagement was not subject to any term or other written contracts.

50.    The services rendered by Plaintiffs and other SCDs were an integral part of the business models of both the Transportation Companies and the Surgical Centers.

51.    Plaintiffs and other SCDs were not free from control or direction over the performance of their duties.

52.    SCDs were subject to close supervision and monitoring in the performance of their duties.

53.    Defendants recently installed surveillance devices in the SCDs vehicles.

54.    The surveillance devices in the SCD's vehicles are monitored by the Transportation Companies and Surgical Center personnel.  The surveillance policy was implemented to both Pogoriler's and Nikson's drivers at the same time.

55.    Defendants also required SCDs to post a notice in in their vehicles which reads: "Attention you're under 24 hour Surveillance" (the "Surveillance Notice.")  The Surveillance Notice serves as a constant reminder to the SCDs that they are being closely monitored by Defendants and Potential Defendants in the performance of their duties.  True and correct photographs of one such sign and surveillance device are shown below.

CLASS AND COLLECTIVE ACTION COMPLAINT          13

 

56.     According to BackVue, the manufacturer of the surveillance devices, in addition to video surveillance and video recording features, the surveillance devices provide "GPS tracking and logging" allowing "small business owners [to] monitor delivery vehicles on a map in real time." https://www.blackvue.com/blackvue-over-the-cloud/ (last visited 1/17/2018).

57.     SCDs do not have access to the information obtained by the surveillance devices installed in their vehicles.

58.     Patient delivery services are not outside the usual course of business of the Transportation Companies or the Surgical Centers.

59.     Upon information and belief, the Surgical Centers bill patients and insurance carriers directly for patient delivery services.  The Surgical Centers obtained substantial revenues from the SCDs' services.

60.    Plaintiffs and other SCDs performed services at Defendants' places of business and after arriving at the Surgical Centers, escorted patients to and from their treatment locations within the Surgical Centers.

61.    SCDs were given assignments from offices located within the Surgical Centers.

62.    Plaintiffs and other SCDs were not customarily engaged in an independently established trade, occupation, profession or business.

63.    The SCDs worked exclusively or almost exclusively for the Transportation Companies and the Surgical Centers.

64.    Defendants controlled the means by which the SCDs performed their services, through their dress code, and substantial behavioral restrictions and through video surveillance.

65.    Plaintiffs and other SCDs did not work at their own convenience.

66.    Assignments were distributed to SCDs from dispatchers located within the Surgery Centers including Surgery Center personnel.

67.    SCDs were not permitted to refuse assignments under threat of termination.

68.    Plaintiffs and other SCDs were not free to engage in other employment given the extraordinary number of hours that Defendants and potential Defendants required them to work.

CLASS AND COLLECTIVE ACTION COMPLAINT          15

69.     The extraordinary number of hours that Defendants demanded the SCDs work for their daily pay, precluded any other substantial outside employment.

70.     Plaintiffs and other SCDs worked a schedule provided to them by Defendants based on the appointments scheduled by the Surgery Centers.

71.     Plaintiffs and other SCDs are not subject to any exemption from the minimum wage and overtime requirements of federal, New York or New Jersey law.

**Defendants and the Potential Defendants were Joint Employers of the SCDs**

72.     Plaintiffs and other SCDs were jointly employed by Defendants and Potential Defendants under federal, New Jersey and New York Law.

73.     The Transportation Companies, the Surgical Centers, the individual defendants and potential defendants acted directly and indirectly in the interest of Moshe and the Surgical Centers in relation to the SCDs.

74.     The Transportation Companies, the Surgical Centers, and the individual defendants and Potential Defendants shared control of the employees.

75.     Defendants and Potential Defendants maintained authority to hire and fire employees.

76.     Moshe threatened to fire workers when he determined they were violating his workplace rules.

77.     Moshe directed the termination of numerous drivers for failure to comply with his rules.

78.     The Transportation Companies also regularly hired and fired SCDs, including workers who were nominally engaged by Pogoriler and Nikson.

79.     Defendants and Potential Defendants supervised the SCDs and enforced workplace rules including the dress code and behavioral rules.

80.     Creus and his predecessor provided the primary dispatch services.  Surgical Center personnel, including Cassandra and Alondra, also provided dispatch services.

81.     Additional supervision was provided by Nikson and Pogoriler at staff meetings based on information obtained from the other Defendants and Potential Defendants.

82.     Defendants and Potential Defendants maintained authority to promulgate work rules and assignments, and set conditions of employment.

83.     Defendants conducted staff meetings led by Nikson, Creus and Moshe's personal driver, Andy.  At these meetings and at other times, Nikson, Creus and Andy informed Plaintiffs and other SCDs of the

expectations and rules laid down by Moshe.  A common refrain at these meetings was "Yan wants []," "Yan said we have to [] …," "Yan said anyone who does not [] will be fired."

84.    SCDs were required to attend meetings with Surgical Center administrators Betty McCabe and Ralph Vellon concerning driving practices, dress code, communications with patients, and transporting patients within the Surgical Centers.

85.    McCabe also met with drivers individually about her workplace expectations.

86.    The Surgical Centers and the Transportation Companies provided the premises and equipment used for the SCDs' work.

87.    SCDs delivered medical patients to and from the Surgical Centers and were required to escort patients within the Surgical Centers to and from their treatment areas.

88.    Identification cards were issued to Plaintiffs and other SCDs by Alondra, an employee of the Surgical Centers.

89.    Surveillance devices installed by Defendants are monitored by Surgical Center personnel and Transportation Company staff, including Defendant Creus. Both Defendant Creus and Surgical Center personnel, have remarked on their observations of SCDs on the surveillance cameras.

90.    Defendants determined the rate and method of payment for the SCDs.  SCDs participated in staff meetings concerning increases in their pay.

91.    In approximately 2014, Defendant Pogoriler informed the SCDs that their daily wages would be cut by $10.  After several months of protests, Defendants Pogoriler informed the SCDs that he would need Moshe's permission to authorize the restore their wages.  The following week Defendants Pogoriler increased the SCDs wages by $10.

92.    In approximately January 2017, after SCDs demanded a raise, Defendant Pogoriler instructed Defendant Creus to cut the number of workdays for anyone who asked for a raise.

93.    At a staff meeting in approximately May 2017, Surgical Center administrator Ralph Vellon told drivers that he would advocate for a raise for the SCDs pay, but that any raise would have to be authorized by Moshe. However, no raise was forthcoming.

94.    At another staff meeting in approximately October 2017, SCDs were informed by Defendant Creus, and Andy, Moshe's personal driver, that they were speaking with Moshe trying to get him to authorize a raise for the SCDs.  Creus and Andy later informed the SCDs that Moshe refused to authorize the raise because he was not satisfied with the SCDs compliance with his rules including the dress code and behavior.

CLASS AND COLLECTIVE ACTION COMPLAINT          19

95.    Plaintiffs and other SCDs worked exclusively or predominantly for the Surgical Centers.

96.    The extraordinary number of hours the SCDs were required to work, precluded substantial outside employment.

97.    In addition to their patient delivery duties, SCDs were required to perform additional services for the Surgical Centers, including transporting Surgical Center personnel, including physicians, to and from their homes, moving equipment and files from one facility to another, running errands, such as purchasing snacks for the Surgical Center reception area, and delivering a cake to an office party in Manhattan for a separate business owned by Moshe.

**Defendants Failed to Comply with Federal, New York and New Jersey Law**

98.    All of the SCDs worked well in excess of forty hours in one or more workweek.

99.    Plaintiffs and other SCDs regularly worked more than ninety hours per week with no premium compensation for overtime.

100.    Plaintiffs and other SCDs regularly worked six or seven days per week.

101.   Plaintiffs and other SCDs were paid a day rate without regard to the number of hours Defendants required them to work.

102.   Plaintiffs and other SCDs were required to drive hundreds of miles per day in the performance of their duties.

103.   The SCDs were required to use their own vehicles and pay their own vehicle maintenance and fuel costs.

104.   Other than tolls, which were paid through an EZ-Pass device furnished by Defendants, Plaintiffs were not reimbursed for any vehicle maintenance expenses, including gasoline, insurance, and repairs.

105.   Each year, the IRS sets standard mileage reimbursement rates for the purposes of deductions for unreimbursed business expenses.

106.   According to the IRS, "[t]he standard mileage rate for business is based on an annual study of the fixed and variable costs of operating an automobile, including depreciation, insurance, repairs, tires, maintenance, gas and oil."

107.   In each year during the prospective Rule 23 class period, the IRS standard mileage rate was as follows:

a. 1/2011-6/2011:          $0.51 per mile;

b. 7/2011-12/2011:         $0.555 per mile;

c. 2012:                   $0.55 per mile;

CLASS AND COLLECTIVE ACTION COMPLAINT          21

d.  2013:                    $0.565 per mile;

e.  2014:                    $0.56 per mile;

f.  2015:                    $0.575 per mile;

g.  2016:                    $0.54 per mile;

h.  2017:                    $0.535 per mile; and

i.  2108:                    $0.545 per mile.

108.   After accounting for unreimbursed expenses which should have been paid by Defendants and Potential Defendants, the SCDs' effective hourly rate, fell substantially below the federal, New York and New Jersey minimum wages.

109.   Plaintiffs and other SCDs worked substantially more than twelve hours per day and regularly worked as many as sixteen hours in a workday, but Defendants never paid workers spread of hours premium pay.

110.   Defendants failed to furnish Plaintiffs and other SCDs with wage statements compliant with the Wage Theft Prevention Act.

111.   Defendants failed to furnish Plaintiffs and other SCDs with notifications of wage rate compliant with the Wage Theft Prevention Act.

**Defendants Retaliated Against Plaintiff for Complaining About Defendants Unlawful Pay Practices**

112.   Defendants retaliated against Plaintiff Espinal in violation of Section 215 of the FLSA; NYLL § 215 and the NJCEPA.

113.    In late August 2017, Plaintiff Espinal complained to Defendants Pogoriler and Creus about Defendants and Potential Defendants' unlawful pay practices set forth above, including their failure to pay minimum wage.

114.    Defendants and Potential Defendants responded to this oral complaint by prohibiting Plaintiff Espinal from working at the Surgical Centers.

115.    Defendant Pogoriler then transferred Espinal to another facility and substantially cut his already unlawfully low pay by 20%, confiscated the EZ-Pass furnished to him by the Transportation Companies and required Plaintiff Espinal to pay for the costs of tolls in connection with the performance of his duties.

116.    On September 11, 2017, Plaintiffs' counsel sent a pre-suit letter to Defendants and Potential Defendants on behalf of Plaintiff Espinal.  In the letter, Defendants and Potential Defendants were asked to refrain from retaliating against Plaintiff Espinal.

117.    On October 5, 2017, after Defendants received written notice from Plaintiffs' counsel that the instant action may be filed by Mr. Espinal, Defendant Pogoriler responded through his counsel with threats of retaliatory counterclaims.  Specifically, his counsel stated: "Any legal action taken against him in his personal capacity will be met in kind.  I also

caution you and ask that you refrain from making any remarks concerning Mr. Pogoriler and his ownership and operation of the transportation companies indicated in your letter as any such defamatory allegations will be addressed by proper legal proceedings."

## COLLECTIVE ACTION ALLEGATIONS

118.   Plaintiffs bring this case as an "opt-in" collective action on behalf of similarly situated SCDs pursuant to 29 U.S.C. § 216(b).

119.   Plaintiffs, on behalf of themselves and the prospective Collective, seek relief on a collective basis challenging Defendants' failure to pay minimum wage and overtime.

120.   The Collective is defined as follows:

> All Surgical Center Drivers who provided driving services for the Surgical Centers within three years from the commencement of this action, who elect to opt-in to this action.

121.   Plaintiffs are similar to other members of the Collective because: 1) each of the members of the Collective had the same job duties; 2) each of the them were misclassified as independent contractors rather than employees; 3) each of them worked more than forty hours in a workweek; 4) none of them were paid overtime premium pay; and 5) each

of them were paid less than minimum wage after accounting for
unreimbursed expenses.

122.    Each Plaintiff's experience is typical of the experiences of the
other prospective class members.  Defendants' failure to pay overtime
wages at the rates required by the FLSA result from generally applicable
policies or practices and do not depend on the personal circumstances of
Plaintiff.

123.    Defendants' violations of the FLSA have been willful, and were
not based on good faith conduct.

## CLASS ACTION ALLEGATIONS

124.    Plaintiffs bring their NYLL and NJWHL claims on behalf of
themselves and a prospective class of persons under Rule 23 of the Federal
Rules of Civil Procedure consisting of:

> All Surgical Center Drivers who have provided driving
> services to any of the Surgical Centers at any time from
> six years prior to the filing of the initial Complaint
> through the date of final judgment in this action.

125.    Excluded from the Rule 23 Class are Defendants, Defendants'
legal representatives, officers, directors, assignees, and successors, or any
individual who has, or who at any time during the class period has had a
controlling interest in Defendants; the Judge(s) to whom this case is

assigned and any member of the Judge's immediate family; and all persons who submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

126.   The prospective Rule 23 Class members are readily ascertainable.  The number and identity of the prospective Rule 23 Class members are determinable from Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay for each Rule 23 Class member may also be determined through discovery.  For purposes of notice and other purposes related to this action, the names and addresses of the prospective Rule 23 Class members are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

127.   The persons in the Rule 23 Class identified above are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

128.   Defendants have employed more than forty SCDs during the class period.

129.   Defendants have acted and/or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

130.    There are questions of law and fact common to the prospective Rule 23 Class members that predominate over any questions solely affecting individual members of the Rule 23 Class, including but not limited to:

a. Whether the SCDs were misclassified as independent contractors rather than employees under New York and/or New Jersey law;

b. whether Defendants failed to keep and maintain true and accurate payroll records for all hours worked by the SCDs;

c. whether Defendants' policies, practices, programs, procedures, protocols, and plans regarding keeping and maintaining payroll records complied with New York and New Jersey law;

d. whether Defendants failed and/or refused to pay Plaintiffs and prospective Rule 23 Class members overtime premium pay for hours worked in excess of 40 hours per work week within the meaning of the NYLL and NJWHL at appropriate overtime rates;

e. whether Defendants failed and/or refused to pay Plaintiffs and prospective Rule 23 Class members minimum wage within the meaning of the NYLL and NJWHL;

f. the extent to which the SCDs' automobile expenses are reimbursable and the proper mileage rate for such reimbursement;

g. the nature and extent of the prospective Rule 23 Class members' classwide injury and the appropriate formula for calculating damages for the SCDs; and

h. whether Defendants acted in good faith in with respect to any violations of the NYLL.

131.    Plaintiffs' claims are typical of the claims of the prospective Rule 23 Class that they seek to represent.  Plaintiffs and the prospective Rule 23 Class work, will work or have worked for Defendants as Surgical Center Drivers.  Defendants misclassified the Plaintiffs and the other SCD's, failed to pay them overtime wages, failed to reimburse them for expenses, failed to pay them an effective wage above the minimum wage and failed to pay them spread of hours premium pay when they were due.  Defendants also failed to furnish Plaintiffs and the other SCDs with wage rate notification statements and wage statements pursuant to the Wage Theft Prevent Act.

132.    Plaintiffs will fairly and adequately represent and protect the interests of the Rule 23 Class.  Plaintiffs have retained counsel competent

and experienced in class and collective actions, wage and hour litigation, and employment litigation.

133.   A class action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of wage and hour litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against their employers.

134.   Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, and treating the claims as a class action would result in a significant savings of these costs.

135.   The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual prospective Rule 23 Class members are not *de minimus*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior

because it will obviate the need for unduly duplicative litigation that may result in inconsistent judgments about Defendants' common practices.

136.   Furthermore, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Indeed, in this case, Plaintiff Espinal has alleged that Defendants have retaliated against them.  Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

### AS AND FOR A FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Overtime and Minimum Wage Violations: FLSA)

137.   Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

138.   Plaintiffs bring this claim for relief on behalf of themselves and all similarly situated employees who opt-in to the action.

139.   At all relevant times, Defendants have been and continue to be, "employers" engaged in the interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

140.   At all relevant times, Defendants have employed, and/or continue to employ, "employee[s]," including Plaintiffs and all similarly situated employees.

141.   At all relevant times, Defendants' enterprise has had gross operating revenues in excess of $500,000.00 and satisfies the threshold test for the "enterprise" requirement under the FLSA.

142.   Defendants employ or employed numerous non-exempt SCDs.

143.   The FLSA requires each covered employer, such as Defendants, to compensate all non-exempt employees for services performed and to compensate them at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week.

144.   Defendants failed to pay Plaintiffs and the prospective class members the required overtime premium for all hours worked in excess of forty in a workweek.

145.   Defendants failed to pay Plaintiffs and the prospective class members the applicable federal minimum wage after accounting for unreimbursed expenses which as a matter of law should have been paid by Defendants.

146.   Defendants' violations of the FLSA were willful, as evidenced by Defendants' common misclassification scheme designed to deprive SCDs of appropriate overtime payments and expense reimbursements, such that their pay fell below the minimum wage.

147.   As a result of Defendants' violations of the FLSA, Plaintiffs and other similarly situated employees have been injured and are entitled to damages for unpaid overtime, liquidated damages and attorneys' fees costs, disbursements and interest thereon.

**AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
**(Overtime and Minimum Wage Violations: New York Labor Law)**

148.   Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

149.   Plaintiffs bring this claim for relief on behalf of themselves and the Rule 23 Class.

150.   At all times relevant to this action, Defendants were Plaintiffs' and the Class' employers within the meaning of NYLL §§ 2 and 651.

151.   At all times relevant Plaintiffs and the Class were Defendants' employees within the meaning of NYLL §§ 2 and 651.

152.   Defendants required, suffered or permitted Plaintiffs and other Class members to work overtime, and willfully failed to pay them overtime

compensation of one and one-half times the regular rate of pay for each hour in excess of forty hours in a workweek as required under NYLL § 650; and § 12 NYCRR § 146-1.4.

153.    Defendants also failed to reimburse Plaintiffs and other SCD's for work-related expenses concerning the use of their automobiles, which brought the effective hourly rate of pay below the applicable New York minimum wage.

154.    As a result of Defendants' NYLL violations, Plaintiffs and the Class are entitled to recover from Defendants, jointly and severally, amounts proven at trial for unpaid overtime wages, liquidated damages, reasonable attorney's fees, and the costs and disbursements of the action, pursuant to NYLL § 663(1).

## AS AND FOR A THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Overtime and Minimum Wage Violations: New Jersey Wage and Hour Law)

155.    Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

156.    Plaintiffs bring this claim for relief on behalf of themselves and the Rule 23 Class.

157.    At all times relevant to this action, Defendants were Plaintiffs' and the Class' employers within the meaning of the NJWHL.

158.   At all times relevant Plaintiffs and the Class were Defendants' non-exempt employees within the meaning of NJWHL.

159.   Pursuant to N.J.S.A. § 34:11-56a4, non-exempt employees are entitled to be paid 1 ½ times their hourly wage for each hour of working time in excess of 40 hours in any week and statutory minimum wages after accounting for unreimbursed expenses properly paid by the employer.

160.   Defendants were required to pay Plaintiffs and other similarly situated workers overtime compensation and minimum wage after the deduction of work-related expenses.

161.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and all other members of the prospective class have suffered damages including unpaid overtime and minimum wage compensation.

162.   As a result of Defendants' NJWHL violations, Plaintiffs and the Class are entitled to recover from Defendants, jointly and severally, amounts proven at trial for unpaid overtime wages unpaid minimum wage, reasonable attorney's fees, pre-and post-judgment interest and the costs and disbursements of the action.

**AS AND FOR A FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**(New York Wage Theft Prevention Act Violations)**

163.   Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

164.   Plaintiffs bring this claim for relief on behalf of themselves and the prospective Rule 23 Class.

165.   NYLL § 195(1) requires Defendants to provide Plaintiffs and the Class with a notification of pay rate at the commencement of their employment since 2011 and on an annual basis between 2012 and 2014, in both English and the employees' primary language, and to preserve those records for a period of six years.

166.   Those statements must include: the employee's rate or rates of pay, including overtime rate of pay; where applicable; how the employee is paid; and any allowances taken as part of the minimum wage.

167.   Defendants failed to furnish notifications of pay rate in compliance with the Wage Theft Prevention Act NYLL §195(1).

168.   NYLL § 195(3) requires Defendants to provide Plaintiffs and the Class with accurate wage statements during each pay period.  The statements must include the rates of pay and the number of regular and overtime hours worked during the pay period.

169.   Defendants failed to furnish wage statements in compliance with NYLL § 195(3).

CLASS AND COLLECTIVE ACTION COMPLAINT          35

170.    Due to Defendants' violation of New York State Law, Plaintiffs and the Class are entitled to recover from Defendants an award of statutory damages pursuant to NYLL § 198, plus costs, interest and reasonable attorneys' fees.

### AS AND FOR A FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Spread of Hours Violation)

171.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

172.    Plaintiffs bring this claim for relief on behalf of themselves and the prospective Rule 23 Class.

173.    At all relevant times, Plaintiffs and the other SCDs were required to work more than ten hours per day.

174.    Plaintiffs and the other SCDs were and still are entitled to be paid an additional hour's pay at the basic minimum hourly wage rate for every day that they worked a spread of hours that exceeded ten (10) hours or a shift in excess of ten (10) hours, pursuant to the NYLL §§ 190, et seq., and 650, et seq., and 12 NYCRR § 142-2.4.

175.    Defendants failed to pay Plaintiffs and the other SCDs the spread of hour wages to which they were entitled under the NYLL.

176.    Defendants' failure to pay Plaintiffs and the Class their lawfully due spread of hour wages a violation of NYLL §§ 190, et seq., and 650, et seq., and 12 NYCRR § 142-2.4.

177.    Pursuant to NYLL § 198, Plaintiffs and the Class are entitled to recovery of full payment of unpaid spread of hour wages, prejudgment interest, reasonable attorney's fees, and costs and disbursements of this action.

## AS AND FOR THE SIXTH CAUSE OF ACTION
### (Retaliation under the FLSA)

178.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

179.    Plaintiff Espinal brings this claim for relief on behalf of himself with respect to monetary damages and on behalf of all other SCD's with respect to injunctive relief.

180.    Pursuant to the FLSA § 215, an employer cannot "discharge or otherwise discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA.  The statute is applicable to internal workplace complaints.

CLASS AND COLLECTIVE ACTION COMPLAINT          37

181.    Defendants took adverse employment action against Plaintiff Espinal by prohibiting him from working at the Surgical Centers, lowering his pay and requiring him to pay for tolls previously paid for by his employers.

182.    Defendant Pogoriler took additional retaliatory action against Plaintiff Espinal through his attorney by threatening him with retaliatory legal action for asserting his claims.

183.    Defendants' retaliatory actions were a direct and proximate result of Plaintiff Espinal's assertion of protected workplace activity.

184.    As a result of Defendants' violations of the antiretaliation provisions of the FLSA, Plaintiffs are entitled to an award of damages including lost wages and emotional distress and punitive damages and recoupment of reasonable costs and attorneys' fees.

185.    Given Defendants pattern and practice of unlawful retaliation, Defendants should be enjoined from any further acts or retaliation and prohibited from communicating with the SCDs about this lawsuit, other than through counsel.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
#### (Retaliation under the NYLL § 215)

186.   Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

187.   Plaintiff Espinal brings this claim for relief on behalf of himself with respect to monetary damages and on behalf of all other SCD's with respect to Plaintiffs' request for injunctive relief.

188.   Pursuant to the NYLL 215(1)(a), "no employer ... shall discharge, threaten penalize, or in any other manner discriminate or retaliate against any employee ... (i) because such employee has made a complaint to his or her employer, because such employee believes that the employer has engaged in conduct that the employee reasonably and in good faith, believes violates any provision of [the NYLL]; (iii) because such employee has instituted or is about to institute a proceeding under or related to [the NYLL]; [and] (iv) because such employee has otherwise exercised rights under" the NYLL.

189.   By transferring and reducing the wages of Plaintiff Espinal, withdrawing the EZ Pass previously furnished to him, and by Pogoriler's threatening Plaintiff Espinal with retaliatory legal action, Defendants violated NYLL § 215.

190.   As a result of Defendants' violations of the antiretaliation provisions of the NYLL, Plaintiffs are entitled to an award of damages, including lost wages, emotional distress damages, and punitive damages and recoupment of reasonable costs and attorneys' fees.

191.   Given Defendants pattern and practice of unlawful retaliation, Defendants should be enjoined from any further acts or retaliation and prohibited from communicating with the SCDs about this lawsuit, other than through counsel.

192.   Pursuant to NYLL 215(2)(b) Plaintiffs have served notice upon the New York Attorney General of their intent to bring this claim.

## AS AND FOR THE SIXTH CAUSE OF ACTION
### (Retaliation under the New Jersey Conscientious Employee Protection Act)

193.   Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

194.   Plaintiff Espinal brings this claim for relief on behalf of himself with respect to monetary damages and on behalf of all other SCD's with respect to Plaintiffs' request for injunctive relief.

195.   The NJCEPA prohibits employers from retaliating against workers who disclose to a supervisor or public body or objects to actions of

the employer that the employee reasonably believed are unlawful.  N.J.S.A. 34:19-3.

196.  Plaintiff Espinal reasonably believed that Defendants were violating the law and lodged their complaints with management, including Defendants.

197.  Plaintiffs Espinal has suffered damages in the form of lost wages and other damages.

198.  By transferring and reducing the wages of Plaintiff Espinal, withdrawing the EZ Pass previously furnished to him and by Pogoriler's threatening Plaintiff Espinal with retaliatory legal action for engaging in protected workplace activity, Defendants have violated the NJCEPA.

199.  As a result of Defendants' violations of the NJCEPA, Plaintiffs are entitled to an award of damages, punitive damages and recoupment of reasonable costs and attorneys' fees, pursuant to N.J.S.A. 34:19-5.

200.  Given Defendants pattern and practice of unlawful retaliation, Defendants should be enjoined from any further acts or retaliation and prohibited from communicating with the SCDs about this lawsuit, other than through counsel.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, demand as follows:

A.      A ruling certifying the Collective and the Rule 23 Classes, appointing Plaintiffs as class representatives, appointing their counsel as Class counsel and authorizing the dissemination of notice to members of the Class and Collective;

B.      An award to Plaintiffs and the Collective and Rule 23 Classes for unpaid minimum wages and overtime and an additional amount equal as liquidated damages;

C.      An award to Plaintiffs and the Rule 23 Class for all hourly wages which were not timely paid at the worker's regular hourly rate and an additional amount equal as liquidated damages;

D.      An award to Plaintiffs and the Class for statutory damages for Defendants' violations of the Wage Theft Prevention Act;

E.      An award to Plaintiffs and the FLSA and Rule 23 classes for prejudgment and post judgment interest;

F.      An award of damages, costs and attorneys' fees to Plaintiff Espinal for Defendants violations of the anti-retaliation provisions of the FLSA, the NYLL and the NJCEPA.

CLASS AND COLLECTIVE ACTION COMPLAINT          42

G.     An award to Plaintiffs for the costs of this action together with reasonable attorneys' fees;

H.     An order enjoining Defendants from engaging in further retaliatory against Plaintiffs or communicating in any way with other potential class members about the lawsuit other than through their attorneys;

I.     Such other and further relief as this Court may deem necessary and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all triable issues.

Dated:  Melville, New York
        January 17, 2018

**THE MARLBOROUGH LAW FIRM, P.C.**

_____
Christopher Marlborough
445 Broad Hollow Road, Suite 400
Melville, New York 11747
T: (212) 991-8960
F: (212) 991-8952
E: chris@marlboroughlawfirm.com

*Attorneys' for Plaintiffs*

CLASS AND COLLECTIVE ACTION COMPLAINT          43